# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY SEAN VINCENT, | Case No. 1:17-cv-01578-SAB |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF No. 16, 19, 20, 22, 23) |
| Defendant. | |

## I.

## INTRODUCTION

Plaintiff Timothy Sean Vincent ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from hypoparathyroidism with seizures, obesity, leg muscle spasm, calcification in the longitudinal cervical ligament at C2-5 with stenosis, learning disorder, and cognitive deficit. For the reasons set forth below, Plaintiff's Social Security appeal shall be granted.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 7, 8.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on July 11, 2012, and a Title XVI application for supplemental security income on June 30, 2012. (AR 83, 84.) Plaintiff's claims were denied on September 27, 2012. (AR 155-158.)

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on September 13, 2013, and a Title XVI application for supplemental security income on September 30, 2013. (AR 153, 154.) Plaintiff's applications were initially denied on April 2, 2014, and denied upon reconsideration on July 7, 2014. (AR 159-161, 162-164, 174-179.) Plaintiff requested and received a hearing before Administrative Law Judge Sharon L. Madsen ("the ALJ"). Plaintiff appeared for a hearing on May 26, 2016. (AR 38-66.) On August 9, 2016, the ALJ found that Plaintiff was not disabled. (AR 17-31.) The Appeals Council denied Plaintiff's request for review on September 28, 2017. (AR 1-3.)

### A.    Hearing Testimony

Plaintiff testified at the May 26, 2016 hearing and was represented by counsel. (AR 41-60.) Plaintiff was born on May 16, 1968, and was 48 years old on the date of the hearing. (AR 42.) Plaintiff is single and does not have any children. (AR 42.) He lives in a house with his step-father. (AR 42.) Plaintiff receives food stamps and general relief. (AR 43.) Plaintiff's friends drive him where he needs to go or he will take the bus. (AR 43.) Plaintiff was in some special education classes when he was in elementary school. (AR 54-55.) Plaintiff has received his GED. (AR 44.) He tried going to college but it did not work out. (AR 44.)

Plaintiff has trouble bending his legs, but he does not need help showering or dressing. (AR 44.) Plaintiff cannot bend over to pick something off the ground. (AR 58.) He cannot put on socks and wears slip on shoes because he cannot bend his right leg. (AR 59.) If he wears another type of shoe he has someone else tie them. (AR 59.)

Plaintiff cleans the cat box and does some cooking. (AR 44.) He does some shopping, goes to church, and hangs out with a friend, Peggy, once a week. (AR 44-45.) Plaintiff watches a lot of television. (AR 45.) He would read but it is too distracting. (AR 45.) Plaintiff will take

a nap if he is really tired. (AR 45.) Peggy will come over and pick him up and take him to her place. (AR 45.) Occasionally, she will take him to Wendy's or another place. (AR 45.)

Plaintiff worked at Taco Bell. (AR 46.) He swept, mopped, prepared food, and did some cashier work. (AR 46.) His most recent manager was new and told him that he could not do the job and fired him. (AR 46, 58.) He did in home support for his mother. (AR 46.) He would do the laundry, cook, and feed the animals. (AR 46.) He made meals for his mother. (AR 57-58.) She did not need help getting around. (AR 46-47.)

Plaintiff does not remember when he last had a seizure, but it was more than a year ago. (AR 47.) Plaintiff gets headaches every now and then that are related to allergies. (AR 47.) Plaintiff has stiffness in his whole leg. (AR 48.) He was having the stiffness when he worked at Taco Bell and could not bend down or squat like everyone else. (AR 48.) The stiffness only affects his legs and not any other parts of his body. (AR 48.) His legs are stiff and kind of hurt when he bends them. (AR 50-51.) He learned to walk sideways to get up the stairs. (AR 51.) His legs were getting progressively worse when he was working at Taco Bell and have continued to get worse. (AR 58.)

Plaintiff is not able to turn his head all the way. (AR 48.) Plaintiff was at the G Street shelter and fell and hit his head on the bench and his neck has been stiff and hurt for a while after that. (AR 49.) A friend came up and scared him and when he turned his head his neck cracked and it has been better since then. (AR 49.) Plaintiff's upper body strength is so-so. (AR 49.)

Plaintiff takes calcium on a semi-regular basis. (AR 50.) He occasionally forgets the evening dose but always takes the morning dose. (AR 50.) His friend helped him set up a pill box with his medication. (AR 50.)

Plaintiff can walk several blocks and then will have to rest. (AR 51.) Plaintiff tends to sway when he stands. (AR 51-52.) Plaintiff can stand for fifteen minutes. (AR 52.) He is able to sit through a two-hour movie but will squirm a bit. (AR 52, 59.) He will get cramps in his legs if he sits too long. (AR 59-60.) He has trouble using his arms to push himself off the couch. (AR 60.) Plaintiff's long-term memory is pretty good, but his short-term memory is not. (AR 53.) He has difficulty remembering what he reads. (AR 55.) Plaintiff was held back in sixth,

seventh, ninth, and tenth grades. (AR 57.) He stopped going to school in the tenth grade because he realized he was going to be twenty-one when he graduated. (AR 57.) Plaintiff went in and took the GED and passed. (AR 56.) He was thinking he might go in the Army but they told him he needed to lose weight. (AR 56.)

Plaintiff is taking medication for depression and is feeling better since he got a place. (AR 54.) He sees a counselor once a month at Golden Valley. (AR 56.) Seeing the counselor helps him. (AR 56.) Plaintiff would have to work to train himself to budget and pay his own bills. (AR 54.) When he focuses he is able to save money, but if he does not then he goes through it. (AR 54.) Plaintiff has a bank account and handles it himself. (AR 60.) He has been told he has adult attention deficit but does not take any medication for it. (AR 60.)

A vocational expert ("VE"), Judith Najarian, also testified at the hearing. (AR 61-65.) Plaintiff's previous work was qualified as a fast foods worker, Dictionary of Occupational Titles ("DOT") 311.742-010, light, SVP 2. (AR 61.) The ALJ presented a hypothetical of an individual with the same age, education, and work background as Plaintiff who can lift and carry 20 pounds occasionally and 10 pounds frequently; can sit, stand, or walk 6 to 8 hours. (AR 62.) The individual cannot climb ladders, ropes, or scaffolds; or work at heights or around dangerous machinery. (AR 62.) The VE opined that this individual would be able to perform Plaintiff's past work. (AR 62.)

The ALJ presented a hypothetical of the same individual except that the person can only stand and sit two hours and is limited to some simple, routine tasks. (AR 62.) The VE opined that this person would not be able to perform Plaintiff's past work. (AR.) The individual would be able to work as a hand bander, DOT 920.687-030, sedentary, SVP 2, with 23,284 jobs in the United States; compact assembler, DOT 739.687-066, sedentary, SVP 2, with 30,303 jobs; and a table worker, DOT 739.687-182, sedentary, SVP 2, with 14, 117 jobs in the United States. (AR 62-63.) Due to the limitation of no moving machinery, that hand bander would be reduced to 11,642 jobs and the compact assembler would be reduced to 15,152. (AR 63-64.) The VE opined that due to a moving conveyer the individual would not be able to work as a table worker. (AR 64.) But he could work as a measurer, DOT 712.687-018, sedentary, SVP 2, with 7,059

jobs.  (AR 64.)

The ALJ included the additional requirement that the individual would have to change positions every fifteen minutes or so.  (AR 63.)  The VE opined there would be no work for this individual.  (AR 63.)

Plaintiff's attorney presented a hypothetical of an individual of Plaintiff's age, education and work experience who was only able to lift and carry less than 10 pounds occasionally and frequently; could stand and walk less than two hours out of an eight-hour day; and sit for about four hours out of an eight-hour day.  (AR 65.)  The VE opined that there would be no work for this individual.  (AR 65.)  If this individual would miss more than two days or more per month there would still be no work for the individual.  (AR 65.)

The VE stated that the testimony was consistent with the DOT.  (AR 65.)

**B.     ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2017.

- Plaintiff has not engaged in substantial gainful activity since the alleged onset date of January 1, 2010.

- Plaintiff has the following severe impairments: hypoparathyroidism with seizures, obesity, leg muscle spasm, calcification in the longitudinal cervical ligament at C2-5 with stenosis, learning disorder, and cognitive deficit.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, sit for six to eight hours in an 8-hour day, and stand and walk for two hours in an 8-hour day.  He cannot climb ladders, ropes, or scaffolds, or work at heights or around dangerous machinery.  He can occasionally stoop, crouch, crawl, kneel, and climb ramps and stairs.  He can perform simple routine tasks.

- Plaintiff is unable to perform any past relevant work.

- Plaintiff was born on May 16, 1968, and was 41 years old which is defined as a younger individual age 45-49 on the alleged disability onset date.

- Plaintiff has at least a high school education and is able to communicate in English.

- Transferability of job skills is not an issue in this case because Plaintiff's past relevant work is unskilled.

- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

- Plaintiff has not been under a disability as defined in the Social Security Act from January 1, 2010, through the date of this decision.

(AR 22-31.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The regulations are generally the same for both types of benefits. Therefore, further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

///

///

7

# IV.

## DISCUSSION AND ANALYSIS

Plaintiff alleges that the ALJ improperly rejected the medical evidence, Plaintiff's testimony, and lay witness testimony and that the step five finding is not supported by substantial evidence.

### A.    Medical Evidence

1.    Dr. Sandoval

Plaintiff argues that the ALJ improperly rejected a seizure questionnaire and medical statement by his treating physician, Dr. Sandoval.  Plaintiff contends that the treatment records provide ample support for the limitations described and the ALJ erred by failing to address the functional assessment with more specificity.  Plaintiff states that the ALJ did not specifically address the limitations that would preclude employment, such as that Plaintiff would miss more than four days per month and that Plaintiff's ability to sit, stand, and walk in a workday does not add up to a full eight hours which is inconsistent with Plaintiff's ability to sustain even sedentary work on a regular and continuing basis.  Plaintiff contends that the ALJ failed to provide clear and convincing reasons to reject the opinion of Dr. Sandoval.

Defendant counters that the ALJ properly discounted the opinion of Dr. Sandoval by providing detailed reasons.  Defendant argues that since Dr. Sandoval's opinion is contradicted by the agency physicians, the ALJ need only provide specific and legitimate reasons to reject the opinion, not clear and convincing reasons.  Defendant contends that the ALJ was entitled to give the general assistance forms completed by Dr. Sandoval no weight because they were not medical opinions, and the ALJ properly gave only some weight to the August 2014 medical opinion because it was overly restrictive and inconsistent with the minimal clinical findings.  Defendant argues that Plaintiff is incorrect in stating that the medical record provides ample support for the opinions opined by Dr. Sandoval.  Defendant contends that the medical record demonstrates grossly normal medical or mild physical exams that do not support the extreme opinion of Plaintiff's functionality.

Plaintiff replies that since the only medical opinions contradicting Dr. Sandoval's opinion

are those of non-examining opinions, Dr. Sandoval's opinion is an uncontradicted opinion and clear and convincing reasons are required to reject it. Plaintiff contends that the reasons provided by the ALJ are not clear and convincing.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general, a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)).

Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substantial evidence, and the ALJ is to resolve the conflict. Andrews, 53 F.3d at 1041. However, if the nontreating physician's opinion is based upon clinical findings considered by the treating physician, the ALJ must give specific and legitimate reasons for rejecting the treating physician's opinion that are based on substantial evidence in the record. Id.

The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

The parties disagree on whether the opinions of non-examining physicians can be contradictory opinions which would only require the ALJ to provide specific and legitimate reasons to reject the treating physician's opinion. The Court ordered the parties to submit supplemental briefing on the standard to apply where the only contradictory opinions are those of the agency non-examining physicians. Plaintiff argues that the ALJ must provide clear and

convincing reasons where the examining or treating physician's opinion is uncontradicted relying on <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1454 (9th Cir. 1984), and <u>Winans v. Bowen</u>, 853 F.2d 643 (9th Cir. 1987). However, <u>Gallant</u> and <u>Winans</u> addressed whether the agency physician's opinions were substantial evidence to support the opinion, not whether clear and convincing or specific and legitimate reasons are required to discount the treating physician opinion.

In <u>Gallant</u>, the ALJ found that while the plaintiff " 'had residual chronic pain and discomfort,' such is not severe, but mild to moderate, and does not prevent claimant from performing light work." <u>Gallant</u>, 753 F.2d at 1454. The appellate court stated,

> The reports of the physicians who did examine claimant, which were submitted relative to Gallant's work-related ability, are persuasive evidence of claimant's disability due to pain and his inability to engage in any form of gainful activity. Although the ALJ is not bound by expert medical opinion on the issue of disability, he must give clear and convincing reasons for rejecting such an opinion where it is uncontradicted. <u>Montijo v. Secretary of Health & Human Services</u>, 729 F.2d 599, 601 (9th Cir.1984); <u>Rhodes v. Schweiker</u>, 660 F.2d 722, 723 (9th Cir.1981). While the ALJ mentioned these opinions, he did not set forth any specific reasons for rejecting their uncontroverted conclusions.
>
> Thus, because the reports of the non-examining physicians were contradicted by all other evidence in the record, the medical evidence relied on below to support the Secretary's determination that Gallant can engage in light and sedentary forms of gainful employment does not constitute substantial evidence that claimant has the residual capacity to perform the levels of exertion required under the Secretary's definition of "light and sedentary" work.

<u>Id.</u>

Defendant argues that contrary to Plaintiff's position, the notion that a non-examining physician cannot contradict another opinion because he did not examine the claimant is an oversimplification. Further, Defendant argues that the cases upon which <u>Gallant</u> relied do not address the issue where there is a contradictory agency physician opinion. Finally, Defendant argues that the <u>Gallant</u> court, while stating that clear and convincing reasons were required to reject an uncontradicted opinion, found that the ALJ did not set forth any specific reasons for rejecting the uncontroverted conclusions.

In <u>Winans</u>, the ALJ found that the plaintiff's impairments did not medically equal a listing impairment. <u>Winans</u>, 853 F.2d at 647 ("This case is not one of contradictory evidence of

a physical impairment, but one in which a treating physician's opinion on the ultimate question of the degree of impairment differs from that of the [nonexamining] physicians.") The appellate court stated, "In the case at hand, the ALJ concluded that Winans' condition does not meet or equal a listed impairment.  This conclusion is not supported by substantial evidence because no specific reasons were given for disregarding Dr. Melson's opinion to the contrary."  Id.  Winans did not state that clear and convincing reasons were required in the situation, but stated that specific reasons were not provided.

   The Court finds that the cases relied on by Plaintiff do not clearly address the issue of the standard that would apply to reject the opinion of a treating physician in the situation presented here.   Both Winans and Gallant considered whether the agency opinions were substantial evidence to support the ALJ's decision.  See also Andrews, 53 F.3d at 1041-42 (considering whether agency physicians' opinions were substantial evidence to support the ALJ's decision where there was no examining physician and rejecting that clear and convincing reasons were required).

   Recently, in an unpublished decision, the Ninth Circuit specifically addressed the argument that the ALJ must provide clear and convincing reasons to reject the opinion of a treating physician that was only contradicted by the agency physicians.  Khal v. Berryhill, 690 F. App'x 499, 501 (9th Cir. 2017).  The panel disagreed, finding that "Dr. Puziss's opinion that Khal could not work was contradicted by the opinions of two reviewing physicians, who concluded that Khal could perform work with certain restrictions.  Khal, 690 F.App'x at 501 (citing Dominguez v. Colvin, 808 F.3d 403, 406-07 (9th Cir. 2015), as amended (Feb. 5, 2016) ("Under our precedent, if a treating doctor's opinion is contradicted by other medical evidence in the record, the ALJ may reject this opinion only by 'providing specific and legitimate reasons supported by substantial evidence.' ").  Id.  However, here, the Court finds that it is unnecessary to decide the issue because the ALJ provided reasons that are insufficient under either standard to discount the opinion of Dr. Sandoval.

   **a.    General Assistance Medical Reports**

   The ALJ considered Dr. Sandoval's October 2013 and October 2015 reports finding that

1  Plaintiff was unable to work fulltime.[3] (AR 26.) On October 29, 2013, Dr. Sandoval completed
2  a general assistance medical report for Merced County. (AR 417.) Dr. Sandoval stated that
3  Plaintiff had hypoparathyroidism which caused proximal leg weakness which was worse if he
4  misses doses of his medication. (AR 417.) Dr. Sandoval opined that this prevents or
5  substantially reduces Plaintiff's ability to work fulltime. (AR 417.)

6         Similarly, Dr. Sandoval completed a general relief form on October 13, 2015. (AR 551.)
7  Dr. Sandoval stated that Plaintiff had hypoparathyroidism, cervical myelopathy, and lower body
8  weakness but described no limitations caused by the conditions. (AR 551.) Dr. Sandoval opined
9  that these conditions prevents or substantially reduced Plaintiff's ability to engage in fulltime
10  work. (AR 551.)

11         The ALJ found that these reports opined on Plaintiff's ability to perform work which is
12  an issue reserved for the commissioner and could not be accorded special weight. (AR 26.) The
13  statement that Plaintiff was unemployable was conclusory and did not include specific work-
14  related limitations or the medical evidence to support the cause for the limitations. (AR 26.)
15  Defendant argues that these are not medical statements under the regulations and because they
16  opine on the ultimate issue of disability the ALJ properly rejected them.

17         Under the regulations, a medical opinion is a statement from an acceptable medical
18  source that reflects judgment about the nature and severity of the claimant's impairments. 20
19  C.F.R. § 404.1527(a)(1). Opinions on some issues are not medical opinions, but are opinions on
20  issues reserved for the Commissioner. 20 C.F.R. § 404.1527(a)(1). One such issue is that the
21  claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). The ALJ does not give
22  any special significance to opinions on issues that are reserved for the Commissioner. 20 C.F.R.
23  § 404.1527(d)(3). To the extent that the general relief statements do not address any functional

24

25  [3] Although Plaintiff contends that the ALJ rejected the Dr. Sandoval's December 2013 seizure questionnaire, it is
    not mentioned by the ALJ in the opinion. (AR 418-419.) In this report, Dr. Sandoval stated that Plaintiff had 5
26  seizures related to hypocalcemia since he had been diagnosed at age 13. (AR 418.) Plaintiff's most recent seizure
    was in 2012 and he had tongue biting and loss of consciousness. (AR 418.) Plaintiff took only calcitriol and
27  Caltrate D for his seizures but he forgets doses of his medication. (AR 418, 419.) Dr. Sandoval did not opine any
    limitations due to Plaintiff's seizures and the ALJ considered that Plaintiff had a seizure in 2012. (AR 25.) The
28  Court finds that if there was any error in addressing this opinion it would be harmless. Molina v. Astrue, 674 F.3d
    1104, 1115 (9th Cir. 2012).

limitations and are merely an opinion that Plaintiff is unable to work, the ALJ properly found that they were not entitled to special weight.

### b. Medical Opinion Re: Ability to do Work Related Activities (Physical)

The ALJ also considered a medical opinion regarding Plaintiff's ability to do work which was completed by Dr. Sandoval on August 5, 2014. (AR 26, 542-544.) Dr. Sandoval opined that Plaintiff could lift and carry less than 10 pounds occasionally and frequently; stand and walk less than two hours in an 8-hour day; and sit for about four hours in an 8-hour day. (AR 26, 542.) Dr. Sandoval stated that Plaintiff could sit for 45 minutes before changing position; stand for 15 minutes before changing position; and walk every hour for 30 minutes. (AR 26, 543.) He would need the opportunity to shift at will from sitting, standing, and/or walking. (AR 26, 543.) He could frequently twist, occasionally climb stairs, and never stoop, crouch, and climb ladders. (AR 26, 543.) Pushing and pulling were affected by Plaintiff's impairment. (AR 543.) Plaintiff should avoid concentrated exposure to extreme cold and heat, wetness, humidity, noise, fumes, odors, dusts, gases, and poor ventilation, and hazardous machinery and heights. (AR 543.) Dr. Sandoval stated that the environmental factors impaired Plaintiff's activities due to weakness in his legs and that Plaintiff was unable to squat. (AR 544.) Dr. Sandoval further opined that would be absent from work about four times per month due to his impairments or treatment. (AR 26, 544.) The ALJ gave some weight to Dr. Sandoval's opinion as a treating physician but found that the opinion was overly restrictive and not consistent with the rather minimal clinical findings. (AR 26.)

The ALJ considered that in May 2012, Plaintiff was hospitalized for three days with tonic-clonic convulsions with loss of consciousness. (AR 25, 456-461.) Plaintiff was not taking any anti-seizure medication and had low calcium. (AR 25, 456, 458.) His discharge diagnoses were generalized tonic-clonic seizures due to hypocalcemia and hypoparathyroidism and noncompliance with medications. (AR 25, 461.)

The ALJ also considered that Plaintiff was seen in the emergency room in September 2013 for hypocalcemia, cellulitis of his leg, and proximal hip flexor weakness of unknown etiology, bilateral. (AR 25, 441-450.) A doppler scan of Plaintiff's leg showed no evidence of

blood clots but he did have bilateral inguinal adenopathy. (AR 25, 442.) His extremities showed some edema with warmth and some erythema on the left shin and calf area. (AR 25, 449.) Plaintiff had tenderness to palpation of the calf and good dorsalis pedis and posterior tibialis pulses. (AR 25, 449.) His hip flexor strength appeared to be decreased although he had good toe extensor and plantar flexion. (AR 25, 449.) His calcium was 4.5, albumin was 4.0, and he had mild anemia, and a reasonable white blood cell count. (AR 25, 449.) All Plaintiff's seizures were noted to be associated with low calcium and he admitted he had not been very compliant with his medications. (AR 25, 445.) Chest x-rays showed cardiac enlargement. (AR 25, 441.) The doctor noted that he had no evidence of heart failure and the suspect may be a fat pad around the heart. (AR 450.)

Plaintiff was seen in the emergency room again in December 2013 to monitor his calcium. (AR 25, 431-438.) He was noncompliant with his medications. (AR 25, 433, 434.) Chest x-rays showed no acute findings and he was diagnosed with hypocalcemia, anemia, hypertension, and persistent productive cough, most likely underlying bronchitis. (AR 25, 423, 435.)

Plaintiff was hospitalized in June 2014 with complaints of diarrhea and incontinence. (AR 25, 675-696.) An abdominal ultrasound showed increased echogenicity of the liver (which may indicate a fatty liver) but was otherwise unremarkable. (AR 25, 665.) A renal ultrasound was normal. (AR 25, 664.) Discharge diagnoses were acute diarrhea, severe hypercalcemia (improved), hypomagnesemia (corrected), hypokalemia (being corrected), hypoparathyroidism, and hypertension. (AR 25, 685.)

The ALJ considered Plaintiff's treatment by Dr. Salazar. (AR 25.) Plaintiff was diagnosed with leg muscle spasm, myelopathy, and brain injury in September 2014. (AR 25, 749.) He complained of extremity weakness, gait disturbance, headaches, numbness, and seizures. (AR 25, 748.) Dr. Salvador advised that surgery would not help due to leg weakness from cervical spine stenosis at C3-4. (AR 25, 746.) Plaintiff was to stay on his calcium. (AR 25, 746.)

In November 2014, Plaintiff had an MRI of the brain which revealed bilateral extensive

14

abnormal signal characteristics involving the caudate nuclei and thalamic nuclei as well as the dentate nuclei within the cerebellum. (AR 25, 545.) This was most likely related to the Plaintiff's abnormalities of calcium phosphate metabolism and hypoparathyroidism and extensive changes of sinusitis. (AR 25, 545.) An MRI of the cervical spine showed calcific deposits in association with the posterior longitudinal ligament from C2-5. (AR 25, 546.) There was spinal stenosis in association. (AR 25, 546.)

While the ALJ addressed some limited treatment records of Dr. Sandoval since September 2014, Plaintiff has been treated regularly by Dr. Sandoval since September 2013. (AR 462.) There is no indication that the ALJ considered these treatment records in evaluating Dr. Sandoval's opinion. The ALJ must consider all medical evidence, and while "[t]he treating physician's opinion is not" "necessarily conclusive as to either physical condition or the ultimate issue of disability[,]" Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989), the ALJ may not simply reject the treating physician's opinion on the ultimate issue of disability, Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014). To reject the opinion of the treating physician, the ALJ must provide proper reasons that are supported by substantial evidence. Ghanim, 763 F.3d at 1161.

Here, while the ALJ cited to the recent medical findings, it is unclear if she considered the treatment records of Dr. Sandoval. Dr. Sandoval has been treating Plaintiff since September 2013, but the ALJ did not cite to any of Dr. Sandoval's treatment notes prior to September 2014. Although the ALJ found that Dr. Sandoval's opinion was overly restrictive and not consistent with the rather minimal clinical findings (AR 26), she did not identify which minimal clinical findings were inconsistent with Dr. Sandoval's opinion or why it was overly restrictive. Defendant argues that the examination records support the ALJ's finding that Plaintiff had only minimal findings because on the day the opinion was issued Plaintiff had poor dentation and distal weakness in both legs, but was well developed and the remainder of the examination was grossly normal. (ECF No. 19 at 23.) Defendant also argues that although there were at times findings of edema, decreased hip flexor strength, and mild cellulitis of the left leg, Plaintiff had generally normal or mild physical examination findings and do not support the extreme opinion

of Plaintiff's functionality. (Id.) However, the ALJ did not cite to any of this evidence in the opinion and the Court cannot consider Defendant's post hac rationalizations. "A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency." Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991).

Further, agency physicians opined as to Plaintiff's residual functional capacity on February 5, 2014 (AR 96-98, 110-112) and July 2, 2014 (AR 129-130, 148-149), but Plaintiff had testing in November 2014 which was not considered by the agency physicians. An MRI of the brain revealed bilateral extensive abnormal signal characteristics involving the caudate nuclei and thalamic nuclei as well as the dentate nuclei within the cerebellum which was most likely related to the Plaintiff's abnormalities of calcium phosphate metabolism and hypoparathyroidism and extensive changes of sinusitis. (AR 25, 545.) An MRI of the cervical spine showed calcific deposits in association with the posterior longitudinal ligament from C2-5 with spinal stenosis in association. (AR 25, 546.) Although the ALJ considered this evidence, there is no medical opinion addressing Plaintiff's capabilities after reviewing these findings.

The Court finds that the ALJ did not provide specific and legitimate, much less clear and convincing reasons to reject the opinion of Dr. Sandoval.

Plaintiff seeks to have the Court credit as true the opinion of Dr. Sandoval and remand for an award of benefits. The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). The credit as true doctrine allows "flexibility" which "is properly understood as requiring courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. Garrison, 759 F.3d at 1021.

Review of the medical record cited by Defendant does demonstrate that Plaintiff had generally normal or mild examination findings which would not support Dr. Sandoval's August 5, 2014 opinion. Plaintiff argues that Dr. Sandoval opined that Plaintiff would miss work four days per month which in itself would preclude work. However, Dr. Sandoval opined that Plaintiff's limitations were caused by his hypothyroidism which caused proximal muscle weakness, an inability to reach his feet, and minimal pain. (AR 542.) His residual functional findings were stated to be supported by Plaintiff inability to reach his feet and maintain balance. (AR 544.) Further, Dr. Sandoval opined that Plaintiff required environmental limitations due to his weakness in his legs and his ability to squat. It is unclear how avoiding exposure to extreme cold, extreme heat, wetness, humidity, noise, fumes, odors, dust, gasses, and poor ventilation, and hazards would be required by Plaintiff's leg weakness. (AR 543.) Dr. Sandoval's finding that Plaintiff would miss four days per month due to his leg weakness, balance issues, and inability to reach his feet lacks support in the record. Specifically, although Plaintiff complained of leg weakness, extremity examinations were generally normal or demonstrate only mild findings (AR 437, 492, 496, 500, 507, 651, 679, 683). Further, the medical record after August 2014 shows that Plaintiff was able to extend his legs and point his toes against gravity. (AR 646.)

His symptoms were noted to be mild on October 6, 2014. (AR 640.) On October 30, 2014, Dr. Sandoval found some hyperpigmented changes, but no erythema, no warmth, and no swelling. (AR 632.) Although, Dr. Sandoval notes leg weakness periodically throughout the record, on November 13, 2014, Plaintiff is noted to have muscle strength of 5/5 in the lower extremities. (AR 627.) On March 12, 2015, Plaintiff had an unremarkable physical examination. (AR 731.) On March 17, 2015, Dr. Sandoval noted a normal extremity exam with no edema. (AR 603.)

Plaintiff attend physical therapy in May 2015 and was noted to have normal tone and his balance was normal with sitting, standing, and dynamic movement. (AR 659.) In June 2015, Plaintiff reported that he was able to run up a ramp and he was able to squat down by a chair. (AR 657, 658.) Dr. Renedon examined Plaintiff on June 25, 2015, and noted a generally normal

examination and Plaintiff was able to walk on his tip toes. (AR 657.) In July 2015, Plaintiff is noted to have 4+ strength in his left lower extremity and reported that he was able to work a full eight-hour day. (AR 653, 654, 655, 656.)

The Court finds that review of the record raises serious doubts that Plaintiff is in fact disabled due to his physical impairments. Here, as the ALJ did not adequately address the treatment records of Dr. Sandoval and no physician opined on Plaintiff's physical abilities following his test results on November 2014, the Court cannot find that substantial evidence supported the ALJ's decision. Upon remand the ALJ shall consider all medical evidence anew, obtain additional medical opinion evidence as to Plaintiff's physical functioning from a consultative examiner or a medical expert, and further develop the record as deemed necessary.

2.    LCSW Perez

Plaintiff also argues that the ALJ erred in giving little weight to the opinion of LCSW Perez. Plaintiff contends that the ALJ erred by finding that he received minimal mental health treatment when he was regularly treated by LCSW Perez and received medication for his mental health issues. Defendant counters that the ALJ gave germane reasons to reject the opinion of LCSW Perez and that the finding that Plaintiff received rather minimal mental health treatment is supported by the record.

The ALJ must also consider the opinions of medical providers who are not within the definition of an acceptable medical source. 20 C.F.R. § 404.1527(f). Opinions of these sources are not entitled to the same deference as an acceptable medical source, and the ALJ must provide reasons germane to the witness to reject the opinion. Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). The factors to be considered in evaluating the opinion are the same factors used to evaluate acceptable medical sources. 20 C.F.R. § 404.1527(f). These factors are the nature and extent of the treatment relationship, length and frequency of treatment, the supportability of the opinion, consistency with the medical record, specialization of the source, and other factors that either support or contradict the medical opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

The ALJ considered the May 2015 opinion of licensed clinical social worker Sandra

Perez.  (AR 27, 547-550.)  Ms. Perez opined that Plaintiff had a fair ability to use of judgment; a poor ability to follow work rules, relate to co-workers, interact with supervisors, and maintain attention and concentration; and no ability to deal with the general public, deal with work stress, and function independently.  (AR 27, 548.)  She found that Plaintiff had a fair ability to understand, remember, and carry out simple job instructions; and a poor ability to understand, remember, and carry out complex job instructions, and understand, remember, and carry out detailed but not complex job instructions.  (AR 27, 549.)  Ms. Perez opined that Plaintiff would have a fair ability to maintain personal appearance, behave in an emotionally stable manner, and demonstrate reliability; and a poor ability to relate predictably in social situations.  (AR 27, 549.)  Finally, Ms. Perez opined that Plaintiff had no restriction of activities of daily living; moderate difficulties in maintaining social functioning; and marked difficulties in maintaining concentration, persistence, or pace; and would be absent from work more than twice per month.  (AR 27, 549, 550.)  Plaintiff was diagnosed with depression with anxiety and adult attention deficit hyperactivity disorder.  (AR 27, 550.)  Ms. Perez stated that Plaintiff had a treatment history of an initial visit on November 10, 2014, and had been seen monthly since March 2015 with his most recent appointment being July 7, 2015.  (AR 550.)  Plaintiff had responded to treatment with improved coping and improved mood stability.  (AR 550.)

The ALJ found that Ms. Perez was not an acceptable medical source and her opinion was given little weight considering the minimal mental health treatment that Plaintiff had received.  (AR 27.)  Defendant argues that Ms. Perez as a licensed social worker is not an acceptable medical source and is not qualified to even diagnose an impairment for Social Security purposes, but the ALJ must consider the opinions of medical providers who are not within the definition of an acceptable medical source. 20 C.F.R. § 404.1527(f).  Therefore, the fact that Ms. Perez is not an acceptable medical source is not a germane reason to reject her opinion.

Defendant argues that the record supports the finding that Plaintiff received rather minimal mental health treatment.  Defendant points out that Plaintiff received no mental health treatment from the alleged onset date in January 2010 until March of 2014.  Defendant further contends that during these years his physicians did not recommend that he take psychotropic

medications and he did not receive any in-patient or intensive out-patient psychiatric treatment. Plaintiff responds that the ALJ improperly characterized his regular mental health counseling and medication as rather minimal mental health treatment.

The ALJ considered that Plaintiff was seen by Ms. Perez for individual therapy in 2015 and by February 2016 he was much improved and his mood was more stable. (AR 22-23, 556, 559.) The ALJ found that there was no evidence that Plaintiff's depression required more than sporadic medical treatment or resulted in any medical complications. (AR 23.) The ALJ also considered the May 2015 opinion giving it little weight be because of the rather limited mental health treatment Plaintiff had received. (AR 27.)

Review of the record demonstrates that Plaintiff consistently had normal mental examinations or no mental findings are noted in the treatment records. (AR 448, 459, 468, 492, 575, 589, 603, 611, 623, 627, 638, 642, 646, 651, 681, 731, 738.) On March 20, 2014, Plaintiff reported to Dr. Swanson that he had problems with his memory but other than that he was feeling pretty good the day of the testing and indicated that he feels about the same most days. (AR 482, 483.) Plaintiff's first visit with Ms. Perez was on November 10, 2014, (AR 630), and there is no evidence in the record of any treatment or mental symptoms prior to this time other than a June 8, 2014 visit to the emergency room due to severe diarrhea. (AR 680, 684.) Ms. Perez next saw Plaintiff on March 4, 2015, continuing to see him every one to two months until March 28, 2016. (AR 553-554, 606-607.)

In June 3, 2015, the record notes some progress and Plaintiff is taking his medication although he sometimes forgets. (AR 595.) Plaintiff's mood appeared more stable, he was less depressed, more hopeful and was talking about looking for work. (AR 595.)

In October 2015, Plaintiff is noted to be making no progress and is not taking his medication regularly. (AR 578.) He is noted to be improving his medication compliance in November 2015, but is making minimal progress. (AR 570.) In December 2015, Plaintiff reported that he is taking his medication as directed and it is helping to reduce his anxiety. (AR 570.)

In January 2016, the record notes that Plaintiff is continuing to show progress, with a

euthymic[4] mood and is more stable. (AR 562.) In February and March 2016, the record reflects Plaintiff is continuing to make progress toward his goals and is mood is euthymic. (AR 556, 553.)

Substantial evidence in the record supports the ALJ's finding that Plaintiff only received counseling and medication after March 2015 that improved his symptoms demonstrating rather minimal mental health treatment. The ALJ provided a germane reason to reject the opinion of Ms. Perez.

### B.    Credibility of Plaintiff

Plaintiff argues that the ALJ erred by rejecting Plaintiff's credibility based on his daily activities because they are not of a quality or duration equivalent to what would be required to perform work nor are they inconsistent with his testimony. Plaintiff contends that the ALJ improperly singled out a few periods of temporary well-being from a sustained period of impairment.

Defendant counters that the ALJ properly discounted Plaintiff's symptom testimony. Defendant points out that the ALJ relied on the fact that the objective medical evidence did not support the degree of limitation alleged, that his seizures were controlled with medication, he did not comply with treatment, his symptoms improved with conservative treatment, he engaged in daily activities that undermined his claims of total disability, he made inconsistent statements, and that he held himself out as able to work.

Plaintiff replies that the reasons provided by the ALJ to reject his testimony are not clear and convincing. His daily activities and the fact that he applied for unemployment benefits cannot be relied upon because he was homeless and none of these activities are inconsistent with his testimony that he has difficulty concentrating, following directions, squatting, turning his head, remembering to take his medications, etc. Plaintiff contends that due to his severe mental impairments he would be unable to successfully perform a job.

"An ALJ is not required to believe every allegation of disabling pain or other non-

---

[4] Moderation of mood, not manic or depressed. Stedman's Medical Dictionary 678 (28th Ed. 2006).

exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina, 674 F.3d at 1112. The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Then "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015). "The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . .." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284). The district court is constrained to review those reasons that the ALJ provided in finding the claimant's testimony not credible. Brown-Hunter, 806 F.3d at 492.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms was not consistent with the medical evidence and other evidence in the record.  (AR 27.)

The ALJ considered that Plaintiff alleged that he cannot work due to hypoparathyroid, seizures, and a learning disability.  (AR 24.)  Plaintiff also reported cramping in his hands and legs, difficulty concentrating, fatigue, stiffness, and mood disorder.  (AR 24.)  The ALJ noted that Plaintiff's seizures were due to hypocalcemia and hypoparathyroidism and noncompliance with medications.  (AR 25.)  Plaintiff also had a history of leg edema and weakness.  (AR 25.) The ALJ found that Plaintiff seizure symptoms are not as limiting as Plaintiff alleges due to his noncompliance with medication.  (AR 28.)  When Plaintiff was taking his medication, his seizures improved and he was more coherent, happy and felt well.  (AR 28.)  Physical therapy improved Plaintiff's leg weakness.  (AR 28.)  The ALJ found that Plaintiff's symptoms were not supported by the medical evidence.  (AR 28.)

1.  Lack of Medication Compliance

The ALJ found that Plaintiff was not entirely compliant with his medications which suggests that his symptoms were not as limiting as he alleged.  (AR 28.)  In determining the credibility of a claimant's symptom testimony, the ALJ may properly rely on " 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Molina, 674 F.3d at 1113.

Plaintiff argues that his failure to comply with treatment is not a specific and legitimate reason to reject his testimony because he had limited financial resources to obtain his medication.  There is some evidence in the record during 2012 and 2013 that Plaintiff failed to comply with treatment due to his limited financial resources.  (AR 456, 462.)  However, review of the record shows that generally Plaintiff's failure to comply was not due to his limited resources.

In 2007, Plaintiff reported that he tries to take his medication whenever he can but not regularly or as scheduled.  (AR 411.)  In 2008, the record notes that Plaintiff is not paying

attention to instructions and that he did not want medication.  (AR 399, 407.)  In 2013, it is noted that Plaintiff admitted to not taking his medication as prescribed and not following up with doctors.  (AR 445.)  At this time, he said that lately his noncompliance with medication was due to trying to stretch it due to his limited resources.  (AR 448, 462.)  At the following visit, Plaintiff stated that he was still forgetting to take some doses of his medication and was having trouble taking his antibiotic four times a day.  (AR 521.)  The record continues to demonstrate that Plaintiff is not compliant with his medication.  (AR 415.)  On December 3, 2013, Plaintiff was counseled on medication compliance and stated that he would keep his medications in one place only.  (AR 513.)  At the next appointment, Plaintiff stated that he forgets to take doses of his medication.  (AR 509.)  On December 13, 2013, Plaintiff stated that he had not taken his medication for a week because he had a cough.  (AR 433.)  On December 17, 2013, Plaintiff reported that he was not taking his blood pressure medication but that he would.  (AR 505.)

In March 2014, Plaintiff reported that he forgets to take two doses of his medication per week.  (AR 499.)  In April 2014, Plaintiff admitted to only taking his medication about half the time.  (AR 495.)

In December 2014, Dr. Hylton notes that he informed Plaintiff that he had to stay on his calcium medication and that surgery would not help him.  (AR 746.)  Plaintiff reported being complaint with his medication in February 2015.  (AR 737.)  In March 2015, Plaintiff reported that he was not taking his medication.  (AR 601.)  In October 13, 2015, Plaintiff reported that he was taking his medication using a reminder on his phone.  (AR 573.)  In November 2015, Plaintiff reported that he was feeling well and was compliant with his medication.  (AR 724.)  In December 2015, Plaintiff reported that he was taking his psych medication as directed and felt that it was helping to reduce his anxiety.  (AR 562.)  Although Plaintiff argues that it is not reasonable to expect someone with his cognitive impairment to demonstrate perfect adherence to his medication regimen, based on review of the record, and as discussed above, there is minimal evidence supporting Plaintiff's reported mental limitations, the ALJ could reasonably find that Plaintiff's failure to comply with treatment reflected adversely on his credibility.

Specifically, as to Plaintiff's seizure symptoms, there is substantial evidence in the record

that Plaintiff's seizures are related to low calcium levels which are attributable to Plaintiff's failure to comply with medication. (AR 433-434, 448, 458, 462, 467, 505.) To the extent that Plaintiff alleges that the ALJ has singled out a few periods of temporary well-being from a sustained period of impairment, review of the overall medical record demonstrates that Plaintiff's seizure and depression symptoms are rarely referenced in the record and his examination findings in these areas are generally normal. On March 20, 2014, Plaintiff denied any psychological symptoms. (AR 485.) He reported that he felt pretty good and he felt the same most days. (AR 483.) While Plaintiff did report issues with concentration and there were findings of confusion when Plaintiff presented with diarrhea and low hypocalcemia on June 8, 2014 (AR 683-684), the record is generally devoid of other mental complaints prior to his initial appointment with Ms. Perez. Further, Plaintiff consistently had normal mental examinations or the medical record contains no mental findings to support Plaintiff's complaints of disabling mental symptoms. (AR 448, 459, 468, 492, 575, 589, 603, 611, 623, 627, 638, 642, 646, 651, 681, 731, 738.)

2. Improvement with Treatment

The ALJ also found that although Plaintiff alleged that he was unable to work due to leg weakness, he improved with physical therapy. (AR 28.) Plaintiff began physical therapy on May 19, 2015, and reported weakness in his leg since 1990 and that he was unable to get off the floor. (AR 659.) On June 16, 2015, Plaintiff reported that he was able to run up the ramp onto Olive. (AR 658.) On June 26, 2015, Plaintiff reported that he was doing better and was able to squat down by a chair. (AR 657.) On June 13, 2015, Plaintiff reported that he was getting stronger and was able to work 8 hours. (AR 656.)

On July 17, 2015, the record notes that Plaintiff reports he is 70 percent better and his left extremity strength is 4+. (AR 655-656.) Plaintiff was able to bend down and was able to gain extension of the leg press. (AR 655.) On July 27, 2015, Plaintiff reported he was doing pretty good and was working better but still having difficulty squatting down. (AR 654.) On July 30, 2015, Plaintiff had bilateral leg strength of 4+/5 and 5-/5. (AR 653.)

Medical records showing an improvement with medical treatment can properly be

considered in evaluating a Plaintiff's symptom testimony. <u>Morgan v. Comm'r of Soc. Sec.</u> <u>Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999); <u>Warre v. Comm'r of Soc. Sec. Admin.</u>, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.")

3. <u>Medical Evidence</u>

The determination that a claimant's complaints are inconsistent with clinical evaluations can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony. <u>Regennitter v. Commissioner of Social Sec. Admin.</u>, 166 F.3d 1294, 1297 9th Cir. 1999). The ALJ properly considered this evidence in weighing Plaintiff's credibility. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). Here, as discussed throughout the opinion, the objective medical evidence is inconsistent with Plaintiff's complaints that he is disabled due to his seizures, leg weakness, and mental condition.

The ALJ provided clear and convincing reasons to reject Plaintiff's symptom testimony that are supported by substantial evidence in the record.[5]

## C. Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." <u>Stout</u>, 454 F.3d at 1053; 20 C.F.R. § 404.1513(b)(4). "Lay witness testimony is competent evidence and cannot be disregarded without comment." <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting <u>Nguyen v.</u> <u>Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996)). The ALJ must give specific reasons germane to the witness in discounting the lay witness testimony. <u>Stout</u>, 454 F.3d at 1056.

///

---

[5] Plaintiff challenges the additional reasons the ALJ provided to reject Plaintiff's credibility on the ground that they are not clear and convincing reasons. However, since the ALJ provided clear and convincing reasons to reject Plaintiff's symptom testimony any error as to these additional reasons cited would be harmless. <u>Molina</u>, 674 F.3d at 1115. For that reason, the Court declines to address the additional arguments raised in the parties' briefing.

1        1.  <u>Nancy Caudle</u>

2        Plaintiff contends that the ALJ erred by rejecting Nancy Caudle's testimony.  Plaintiff

3   argues that Ms. Caudle's testimony is consistent with the opinions of Dr. Sandoval and LCSW

4   Perez and the ALJ should have credited the testimony.  Defendant counters that the ALJ properly

5   found that Ms. Caudle's list of functional limitations were mostly unquantified and those that

6   were quantified were inconsistent with other evidence in the record or Plaintiff's own testimony.

7        Plaintiff counters that Ms. Caudle did quantify Plaintiff's limitations as she stated that he

8   had difficulty performing basic activities, including remembering to bath himself and take his

9   medications.  Plaintiff further argues that Ms. Caudle stated that Plaintiff had to be given

10  instructions one at a time and the he was not able to adequately perform household chores.

11       The ALJ considered a third-party statement by Ms. Caudle.  (AR 27, 331-341.)  Ms.

12  Caudle stated that she saw Plaintiff several times each week and managed his bills as he lived in

13  a shelter.  (AR 27, 332.)  She indicated that Plaintiff's arms were frequently numb, he had an

14  unsteady and slow gait, he had difficulty standing up from a sitting position, and he could not

15  bend over and reach the floor.  (AR 27, 333.)  Plaintiff cared for his mother until her death in

16  September 2013, did laundry, cleaned, prepared simple meals, took care of his personal

17  grooming needs, and went to church weekly.  (AR 27, 333-336.)  Plaintiff was outside all day

18  every day, walking and/or using public transportation.  (AR 27, 336.)  She indicated that

19  Plaintiff's condition affects certain activities such as lifting, squatting, bending, standing,

20  reaching, walking, sitting, kneeling, stair-climbing, remembering, completing tasks,

21  concentrating, understanding, following instructions, using his hands., and getting along with

22  others.  (AR 27, 338.)  The ALJ found that Ms. Caudle failed to quantify any such limitations or

23  explain how those areas are affected with the exception of walking a few blocks and

24  concentrating for one minute which is not consistent with the other evidence of record or even

25  Plaintiff's own testimony.  (AR 27.)  The ALJ rejected the testimony of Ms. Caudle because it

26  was not consistent with other evidence in the record and with Plaintiff's own testimony.  (AR

27  27.)

28       The ALJ rejected Ms. Caudle's testimony noting that she stated that Plaintiff could only

concentrate for one minute which was inconsistent with other evidence in the record.  (AR 27.)

An ALJ may reject lay witness testimony that conflicts with the medical evidence.  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Bayliss, 427 F.3d at 1218.  Here, the ALJ had noted that Dr. Swanson performed a consultative examination and opined that Plaintiff could maintain concentration and relate appropriately to others in a job setting and was able to understand, carry out and remember simple instructions.  (AR 27, 485.)  As the ALJ found, Ms. Caudle's testimony that Plaintiff was only able to concentrate for one minute is inconsistent with Dr. Swanson's finding after examining Plaintiff that he maintained adequate concentration to perform work.  The ALJ can properly reject testimony that conflicts with the available medical evidence.  Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984).  The ALJ provided a germane reason to reject Ms. Caudle's testimony.

### 2. Tim Adams

Plaintiff also contends that the ALJ erred in rejecting a letter written by the operations manager of the Merced County Rescue Mission explaining that Plaintiff had not been accepted into the New Life Transformation Program because his physical disabilities prevented him from participating in the work therapy portion of the program.  Plaintiff argues that this testimony demonstrates that during the relevant time period Plaintiff did not have the ability to perform full-time work on a regular and continuing basis.  Defendant counters that Mr. Adam's letter regarding his qualifications to participate in the work therapy program is not an opinion or observation regarding Plaintiff's work-related functionality and is inconsistent with the medical evidence.  Plaintiff counters that law witnesses are not required to have a treating relationship with the claimant and the testimony was improperly rejected.

The ALJ considered a letter from Tim Adam, the operations manager from the Rescue Mission.  (AR 27, 365.)  Mr. Adam stated that Plaintiff had applied to the New Life Transformation Program at the Merced Rescue Mission and they were unable to accept him because of his physical disabilities.  (AR 27, 365.)  Mr. Adam stated that Plaintiff would not physically be able to participate in the work therapy.  (AR 27, 365.)

The ALJ rejected Mr. Adam's opinion because he is not an acceptable medical source

and does not have a treating relationship with Plaintiff. (AR 27.) The Court finds that these are not germane reasons to reject the testimony of Mr. Adam.

Defendant argues that Mr. Adam's opinion is inconsistent with the medical evidence, however, the ALJ did not provide this as a reason to reject the opinion. Ceguerra, 933 F.2d at 738.

However, to the extent that Mr. Adam opines that Plaintiff is physically unable to work, the issue is beyond Mr. Adam's expertise and is of questionable value to the ALJ in determining Plaintiff's residual functional capacity. See Skeens v. Astrue, 903 F.Supp.2d 1200, 1215 (W.D. Wash. 2012) (finding that letter from vocational rehabilitation counselor that claimant's physical disabilities prevent him from finding employment contains opinion beyond the witness's expertise and of questionable value to the ALJ); cf. Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 976 (9th Cir. 2000) (ALJ erred by failing to address letters of coworkers and friends that specifically addressed claimant's deficiencies in concentration, persistence, and pace that resulted in a frequent or constant failure to complete tasks in a timely manner.).

Plaintiff argues that Mr. Adam's letter establishes that Plaintiff did not have the ability to perform fulltime work on a regular and continuing basis, however whether Plaintiff's impairments prevent him from working is an issue reserved for the Commissioner. 20 C.F.R. § 404.1527(d). The regulations provide that because such evidence is neither valuable nor persuasive on the issue of whether a claimant is disabled, no analysis about how the evidence was considered will be provided in the opinion. 20 C.F.R. § 404.1520b(c)(3)(i). As Mr. Adam did not proffer any statements regarding Plaintiff's limitations due to his physical impairments, any error in failing to provide germane reasons to reject his testimony that Plaintiff was unable to physically participate in work therapy would be harmless. Molina, 674 F.3d at 1115.

### D. Step Five Finding

Finally, Plaintiff argues that the step five finding is not supported by substantial evidence because the hypothetical presented to the ALJ omitted Plaintiff's credible allegations, the limitations described by the lay witness, and the limitations assessed by Plaintiff's treating providers. Defendant counters that Plaintiff has not articulated which functional limitations were

not presented to the VE, but is merely realleging the limitations that the ALJ found not to be credible. Plaintiff counters that the hypothetical presented to the ALJ did not contain Plaintiff's credible allegations, the limitations described by the lay witnesses, and the limitations assessed by Plaintiff's treating providers. Therefore, Plaintiff contends that the hypothetical had no evidentiary value.

At step five of the sequential evaluation, the burden shifts to the Commissioner "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir.1995); see also 20 C.F.R. § 416.920(g). At this step, the ALJ considers potential occupations that the claimant may be able to perform. Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015); see 20 C.F.R. § 416.966. The ALJ may rely on the testimony of a vocational expert who testifies about specific occupations that a claimant is able to perform based on his residual functional capacity. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir.2009); 20 C.F.R. § 416.966(e). The hypothetical question that is posed to the vocational expert must contain all the limitations that the ALJ found credible and supported by substantial evidence in the record. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). If the hypothetical question does not reflect all the claimant's limitations then the vocational expert testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009). In concluding the step five analysis the ALJ determines "whether, given the claimant's [residual functional capacity], age, education, and work experience, he actually can find some work in the national economy." Valentine, 574 F.3d at 689; see also 20 C.F.R. § 416.920(g).

This matter is being remanded for the ALJ to reconsider the opinion of Dr. Sandoval. On remand, should the ALJ determine that Dr. Sandoval's opinion is entitled to greater weight, there is a reasonable possibility that the residual functional capacity assessment may change which would affect the hypothetical presented to the VE. As the Court finds that this matter must be remanded for further proceedings, the Court need not address Plaintiff's argument that the step five finding is not supported by substantial evidence in the record.

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ erred by failing to provide legally sufficient reasons to reject the opinion of Dr. Sandoval. Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED and this matter is remanded back to the Commissioner of Social Security for further proceedings consistent with this order. It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Timothy Sean Vincent and against Defendant Commissioner of Social Security. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **December 26, 2018**

UNITED STATES MAGISTRATE JUDGE